[Cite as *State v. Taveras*, 2017-Ohio-1496.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO. CA2016-06-054 |
| | : | O P I N I O N |
| - vs - | | 4/24/2017 |
| | : | |
| FERMIN A. TAVERAS, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 11 CR 27394

David P. Fornshell, Warren County Prosecuting Attorney, Kirsten A. Brandt, 520 Justice Drive, Lebanon, Ohio 45036, for plaintiff-appellee

Allen Law Firm, LLC, Mitchell W. Allen, 8469 Mason-Montgomery Road, P.O. Box 227, Mason, Ohio 45040, for defendant-appellant

**HENDRICKSON, P.J.**

{¶ 1} Defendant-appellant, Ferman A. Taveras, appeals from a decision of the Warren County Court of Common Pleas denying his post-sentence motion to withdraw his guilty plea. For the reasons set forth below, we affirm the decision of the trial court.

{¶ 2} Appellant is a citizen of the Dominican Republic but has been a lawful permanent resident of the United States since he entered the country as a child in 1966.

Appellant's first language is English, and he has a 10th grade education. Appellant served in and was honorably discharged from the United States Army Reserves. He is married to a United States citizen with whom he has a child.

{¶ 3} On May 2, 2011, after drinking all day, appellant left his residence in Warren County, Ohio and fled from police, who were giving him a visible or audible signal to stop his vehicle. Appellant led police in a pursuit during rush hour traffic in the city of Mason and Deerfield Township area. Appellant ran stop signs and red lights and nearly struck several vehicles. When appellant was finally stopped, he had a strong odor of an alcoholic beverage about his person, had bloodshot and glassy eyes, and was unsteady on his feet. Appellant admitted he had been drinking heavily and was impaired. Appellant was arrested and taken to the police station. A breath test was administered, which resulted in a reading of .229.

{¶ 4} Appellant was indicted on one count of failure to comply with an order or signal of a police officer, a felony of the third degree, and two counts of operating a vehicle while under the influence of alcohol or drug of abuse ("OVI"), misdemeanors of the first degree. Appellant, who was indigent, was appointed counsel.

{¶ 5} On September 6, 2011, following plea negotiations, appellant pled guilty to failure to comply with the order or signal of a police officer and one count of OVI in exchange for the other OVI count being dismissed. Appellant executed a Change of Plea and Entry form, which stated, "I am a citizen of the United States." When questioned by the trial court about the form, appellant indicated he had signed the form, he understood what he signed, and he did not have any questions. The trial court accepted appellant's guilty plea and set the matter for sentencing on October 12, 2011, so that a presentence investigation ("PSI") report could be prepared.

{¶ 6} Appellant's status as a noncitizen was discovered during the court's presentence investigation. At the October 12, 2011 sentencing hearing, after confirming

appellant's status as a noncitizen, the trial court advised appellant as follows:

> THE COURT: As you are not a citizen of the United States you are being advised that to [sic] the offenses to which you have pled guilty may have the consequences of deportation, exclusion from admission to the United States for [sic] denial of naturalization pursuant to the laws of the United States. You understand that, sir?

Appellant indicated he understood the court's advisement. The trial court then informed appellant that it would allow him additional time to consider whether he wanted to proceed with sentencing or whether he wanted to withdraw his plea. Appellant indicated he wished to proceed with sentencing. The trial court sentenced appellant to community control for three years and suspended his driver's license for five years. As conditions of his community control, appellant was ordered to serve 45 days in jail, spend 90 days on electronic monitoring, pay a $375 mandatory fine, complete a drug, alcohol, and mental health evaluation, and comply with any recommendations resulting from such evaluation. Appellant was advised that a violation of his community control sanctions could result in a two-year prison sentence.

{¶ 7} Appellant admitted to violating the terms of his community control in October 2012, June 2014, and March 2015. Following the first two violations, the trial court continued appellant's community control with additional sanctions. However, on March 2, 2015, after appellant's third violation, the trial court revoked appellant's community control and sentenced him to two years in prison, with credit for 264 days.

{¶ 8} Shortly after appellant's community control was revoked and he was imprisoned, the United States Department of Homeland Security ("DHS") initiated deportation proceedings against him.[1] DHS alleged, among other things, that appellant was removable

---

1. The exact date deportation proceedings were initiated against appellant is unclear. It appears from the record that DHS served appellant with a "Notice to Appear" for removal proceedings near the end of March 2015. However, an immigration court found that DHS issued its Notice to Appear to appellant on May 15, 2015. For

from the country pursuant to 8 U.S.C. 1227(a)(2)(A)(iii) as he had been convicted of an aggravated felony, wherein the term "aggravated felony" means a "crime of violence * * * for which the term of imprisonment [is] at least one year." 8 U.S.C. 1101(a)(43)(F).

{¶ 9} On April 18, 2016, more than 13 months after he was sentenced to prison for his community control violation and more than 11 months after DHS instituted deportation proceedings against him, appellant filed a motion to withdraw his guilty plea and vacate his conviction. In his motion, appellant asserted he received ineffective assistance of counsel as his attorney failed to advise him of the immigration consequences of his plea. Appellant argued that had he known he was deportable and subject to a permanent, unwaivable bar to reentry to the United States, he would not have pled guilty. In support of his motion, appellant attached an affidavit in which he averred that he did not discuss the immigration consequences of his plea with his appointed counsel or any other attorney before entering his plea or before or at his sentencing hearing. He further averred that he had not read or reviewed the Change of Plea and Entry form with his attorney prior to signing it at the plea hearing and was therefore unaware that the form contained the statement that "I am a citizen of the United States." Finally, appellant attested that although the trial court advised him at the sentencing hearing that he could be subject to deportation as a result of his guilty plea and gave him the opportunity to withdraw his plea, he "did not understand the consequences of [his] plea since [he] had no advice from any attorney about the matter * * * [and] was under a tremendous amount of stress at the time * * *." Appellant stated that his attorney "did not discuss with me or give me any advice and counsel about the option of withdrawing the plea or continuing the hearing."

{¶ 10} The state filed a memorandum opposing appellant's request to withdraw his

---

purposes of the present appeal, this court will use May 15, 2015, as the date removal proceedings were initiated against appellant.

guilty plea, and a hearing was held on May 16, 2016.  Appellant was the only witness to testify, and his testimony was consistent with the statements set forth in his affidavit.  At the hearing, appellant also introduced documents related to the deportation proceedings instituted against him.

{¶ 11}  On May 27, 2016, the trial court denied appellant's motion to withdraw his guilty plea.  In denying appellant's motion, the court noted that it had provided a "near-verbatim recitation of the language contained in R.C. 2943.031" at the sentencing hearing and appellant had declined the court's offer "to continue the sentencing hearing or withdraw his plea."  The court determined that appellant could not prevail on his ineffective assistance of counsel claim as he was unable to demonstrate prejudice, as required by the second prong of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984).  The court further determined that "[w]ithdrawal of the plea is * * * problematic where the [appellant] does not claim he is innocent of the underlying charges, [but] rather he wants to, in the words of his attorney, take his chances at trial."

{¶ 12}  Appellant timely appealed the denial of his motion, raising the following as his sole assignment of error:

{¶ 13}  THE TRIAL COURT ERRED IN DENYING [APPELLANT'S] MOTION TO WITHDRAW GUILTY PLEAS WHERE [APPELLANT] PRODUCED UNCONTROVERTED EVIDENCE OF INEFFECTIVE ASSISTANCE OF COUNSEL AND WHERE HE TESTIFIED THAT, HAD HE KNOWN THE ACTUAL IMMIGRATION CONSEQUENCES OF A PLEA IN HIS CASE, HE WOULD NEVER HAVE ENTERED THE PLEA.

{¶ 14}  In his sole assignment of error, appellant contends the trial court erred in denying his motion to withdraw his guilty plea where he presented uncontroverted evidence that had his defense counsel properly advised him of the adverse immigration consequences

of his guilty plea, he would not have entered such a plea.[2]

{¶ 15} Pursuant to Crim.R. 32.1, "[a] motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." A defendant who seeks to withdraw a guilty plea after the imposition of a sentence has the burden of establishing the existence of a manifest injustice. *State v. Williams*, 12th Dist. Clermont No. CA2012-08-060, 2013-Ohio-1387, ¶ 11, citing *State v. Smith*, 49 Ohio St.2d 261 (1977), paragraph one of the syllabus. In general, a manifest injustice relates to "a fundamental flaw in the proceedings that results in a miscarriage of justice or is inconsistent with the demands of due process." *State v. Hobbs*, 12th Dist. Warren No. CA2012-11-117, 2013-Ohio-3089, ¶ 9.

{¶ 16} "A motion made pursuant to Crim.R. 32.1 is addressed to the sound discretion of the trial court." *State v. Tapia-Cortes*, 12th Dist. Butler No. CA2016-02-031, 2016-Ohio-8101, ¶ 12. An appellate court will not reverse a trial court's decision absent an abuse of discretion. *Id.* An abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's attitude was arbitrary, unreasonable, or unconscionable. *State v.*

---

2. {¶ a} The state contends that appellant's arguments are moot due to the Sixth Circuit Court of Appeals' decision in *Shuti v. Lynch*, 828 F.3d 440 (6th Cir.2016), wherein the court determined that the definition of "crime of violence" as set forth in 8 U.S.C. 1101(a)(43)(f) and 18 U.S.C. 16(b) is unconstitutionally void for vagueness. The state contends appellant no longer has a "live controversy" as he "has been released from [United States Citizenship and Immigration Services] custody" since the *Shuti* case was decided. The state argues, "[s]ince [appellant's] classification as a deportable alien is based on his conviction of an 'aggravated felony,' which in turn relies on the definition of 'crime of violence' * * * and that classification is unconstitutional as being based on an unconstitutionally void definition, [appellant] may never be deported, banned from returning or denied naturalization. * * * [I]t does not appear that [appellant] will suffer immigration consequences."

{¶ b} A case is moot when "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Allen v. Totes/Isotoner Corp.*, 123 Ohio St.3d 216, 2009-Ohio-4231, ¶ 17. "A cause will become moot only when it becomes impossible for a tribunal to grant meaningful relief, even if it were to rule in favor of the party seeking relief." *Id.* at ¶ 18. We find that in this appeal, the issues are live ones, not remote possibilities based on controversies that may never occur. In determining that a live controversy exists, we note that the United States Attorney General has filed a petition for a writ of certiorari with the United States Supreme Court, seeking review of the *Shuti* decision. The Sixth Circuit's decision in *Shuti* appears to be in conflict with the Fifth Circuit Court of Appeals' decision in *United States v. Gonzalez-Longoria*, 831 F.3d 670, 677 (5th Cir.2016), wherein the Fifth Circuit held that 18 U.S.C. 16(b) is not unconstitutionally vague.

*Robinson*, 12th Dist. Butler No. CA2013-05-085, 2013-Ohio-5672, ¶ 14.

{¶ 17} Ineffective assistance of counsel is a proper basis for seeking a post-sentence withdrawal of a guilty plea. *State v. Guerrero*, 12th Dist. Butler No. CA2010-09-231, 2011-Ohio-6530, ¶ 5; *Tapia-Cortes* at ¶ 13. When an alleged error underlying a motion to withdraw a guilty plea is ineffective assistance of counsel, the defendant must show (1) that his counsel's performance was deficient and (2) that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty. *Id.*, citing *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052 (1984). "The proponent of an ineffective assistance claim must establish both elements to warrant relief." *State v. Robinson*, 12th Dist. Butler No. CA2014-12-256, 2015-Ohio-4649, ¶ 48.

{¶ 18} In *Padilla v. Kentucky*, 559 U.S. 356, 366, 130 S.Ct. 1473 (2010), the United States Supreme Court determined that an attorney's advice regarding deportation falls within the ambit of the Sixth Amendment's right to counsel. "Consequently, when negotiating a guilty plea, counsel has a duty to accurately advise his noncitizen client of the immigration consequences of the plea." *Tapia-Cortes* at ¶ 14, citing *State v. Ayesta*, 8th Dist. Cuyahoga No. 101383, 2015-Ohio-1695, ¶ 15. Counsel breaches this duty by either providing affirmative misadvice about immigration consequences or by not providing any advice at all when advice is warranted. *Padilla* at 370-371, 374.

{¶ 19} "When the law is not succinct and straightforward * * * a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." *Id.* at 369. However, when the immigration consequences can "easily be determined from reading the removal statute," and "the deportation consequence is truly clear, * * * the duty to give correct advice is equally clear." *Id.* "Counsel's failure to provide a client with available advice regarding deportation 'clearly satisfies the first prong of the *Strickland* analysis.'" *Tapia-Cortes,* 2016-Ohio-8101 at

¶ 15, quoting *Padilla* at 371.

{¶ 20} In the present case, the record does not reflect that defense counsel provided any advice to appellant concerning the immigration consequences of his plea. It does not appear defense counsel knew of appellant's status as a noncitizen at the time of the plea hearing, wherein appellant executed a Change of Plea and Entry form that stated "I am a citizen of the United States."[3] We therefore do not fault defense counsel for not providing appellant with advice about the immigration consequences of his guilty plea as of the time of the plea hearing. However, we do find defense counsel was deficient in not advising appellant of the immigration consequences of his plea once it became clear at the sentencing hearing that appellant was not a United States citizen. Although the trial court advised appellant of possible immigration consequences in accordance with R.C. 2943.031(A), defense counsel has a duty, independent of the trial court's statutory duty, to advise his client of immigration consequences. *Padilla*, 559 U.S. at 369. There is no evidence in the record demonstrating that defense counsel sought a continuance, or even a brief recess, so that he

---

3. {¶ a} Appellant did not attach an affidavit from his appointed trial counsel to his motion to withdraw his guilty plea. Further, appellant's trial counsel was not called as a witness at the hearing on appellant's motion to withdraw his plea. Although trial counsel did not participate in the proceedings addressing appellant's motion to withdraw his plea, both the state's and appellant's representations indicate trial counsel did not learn of appellant's citizenship status until the date of the sentencing hearing. At the hearing on appellant's motion to withdraw his guilty plea, the prosecutor – who was involved in the case at the time appellant entered his guilty plea and was sentenced – engaged in the following discussion with the trial court:

{¶ b} [PROSECUTOR]: Your Honor, until that day [the date of the sentencing hearing], counsel for the defense was unaware of the status of the defendant, as were all the parties involved, the State included and the Court. Defendant was present with counsel - -

{¶ c} THE COURT: How do we know that, Mr. Harris? That [appellant's] attorney was unaware that he was the [sic] United States citizen? Is that contained somewhere in the record?

{¶ d} [PROSECUTOR]: Your Honor, I was present that day and I think it can be gleaned from the transcript, that everybody was unaware until that day and the Court addressed that with [appellant]. Until that pre-sentence investigation came back, all parties were unaware that he was [not] a U.S. citizen, other than [appellant] himself.

could advise appellant about the possibility of deportation and whether he should withdraw his guilty plea as a consequence. Appellant's testimony and affidavit indicate that defense counsel did not discuss any possible adverse immigration consequences with him at the sentencing hearing. Defense counsel was obligated to discuss these matters with appellant, as appellant's right to effective assistance of counsel under the Sixth Amendment extends to all critical stages of the criminal proceeding – including sentencing. *State v. Jones*, 193 Ohio App.3d 400, 2011-Ohio-1717, ¶ 36 (12th Dist.), citing *Gardner v. Florida*, 430 U.S. 349, 358, 97 S.Ct. 1197 (1977); *State v. Robertson*, 141 Ohio App.3d 626, 629 (6th Dist.2001), citing *Coleman v. Alabama*, 399 U.S. 1, 7, 90 S.Ct. 1999 (1970). Therefore, given the record before us, we find that appellant has satisfied the deficiency prong of *Strickland*.

{¶ 21} We next turn to the prejudice prong of *Strickland*. Generally, under this prong, a defendant must show a reasonable probability that, but for defense counsel's errors, he would not have pled guilty. *Guerrero*, 2011-Ohio-6530 at ¶ 5. However, "[i]n the specific context of a defense counsel's failure to advise a defendant of the immigration consequences of a guilty plea, the United States Supreme Court has held that a defendant demonstrates prejudice by 'convinc[ing] the court that a decision to reject the plea bargain would have been rational under the circumstances.'" *Tapia-Cortes*, 2016-Ohio-8101 at ¶ 19, quoting *Padilla* at 372.

{¶ 22} In undergoing the rationality analysis, we have identified several relevant factors a court should consider, including: "(1) the interval of time between the guilty plea and the motion to withdraw the plea, (2) whether a conviction of the offense mandates deportation, (3) the likelihood of a favorable outcome at trial had the defendant not pled guilty, (4) the trial court's compliance with R.C. 2943.031, (5) the defendant's familial and other connections to the community, (6) the defendant's length of residence in the United States, and (7) whether the plea was to a reduced charge or otherwise beneficial to the

defendant." *Id.* at ¶ 20.

{¶ 23} Consideration of these factors indicate that only factors five and six favor appellant. Appellant has been a legal resident of the United States since he came to the country as a child in 1966. At the time he entered his guilty plea in 2011, appellant had been in the United States for over 45 years, had honorably served in the Army Reserves, and was married to a United States citizen with whom he had a child.

{¶ 24} The remaining factors weigh against appellant. Appellant did not expeditiously move to withdraw his guilty plea in this case; rather, the motion was filed more than four and one-half years after he entered his guilty plea. Appellant also waited more than 11 months after DHS instituted deportation proceedings against him to file his motion to withdraw his plea. Additionally, the record reflects that appellant was previously offered the opportunity to withdraw his guilty plea in October 2011, when his status as a noncitizen was first discovered, but appellant sought to proceed with sentencing rather than seeking a withdrawal of his plea.

{¶ 25} The record also reflects that the plea deal was beneficial to appellant. In exchange for appellant pleading to two offenses, one count of failure to comply with the order or signal of a police officer and one count of OVI, a third offense, an OVI count, was dismissed. Had appellant gone to trial, there was not a likelihood of an outcome in his favor. *See State v. Galdamez*, 10th Dist. Franklin No. 14AP-527, 2015-Ohio-3681, ¶ 42 (recognizing that although a court "need not determine to an absolute certainty that a jury would have acquitted" the defendant, there must be some "likelihood of a favorable outcome" had the defendant proceeded to trial). The state's recitation of the facts at appellant's plea hearing, as well as its statements at the sentencing hearing, indicate that law enforcement's pursuit of appellant's motor vehicle through the Mason and Deerfield Township areas was recorded. During this pursuit, appellant ran stop signs and red lights and nearly struck

several other motor vehicles. After he was stopped, appellant submitted to a breath test, which resulted in a reading of .229, he admitted he had been drinking heavily and was impaired, and he was observed with bloodshot and glassy eyes, walking unsteadily, and having a strong odor of alcohol about his person. Given law enforcements observations, appellant's admissions, his blood-alcohol test results, and the recording of the police chase, it is unlikely appellant would have prevailed at trial.

{¶ 26} The fact that the trial court advised appellant of the immigration consequences of his plea in accordance with R.C. 2943.031 at the sentencing hearing also weighs against granting appellant's motion.[4] Although this court, and many other Ohio and federal courts, have backed away from the principle that a trial court's advisement under R.C. 2943.031(A) cures an attorney's failure to properly advise a client as to the immigration consequences of his plea, there are times when a trial court's proper advisement under the statute *may* preclude a finding of prejudice. *See Tapia-Cortes*, 2016-Ohio-8101 at ¶ 27, citing *Ayesta*, 2015-Ohio-1695 and *Galdamez*, 2015-Ohio-3681.

{¶ 27} In the present case, the trial court's statutory advisement matched the level of advisement defense counsel was obligated to provide to appellant pursuant to *Padilla*. As set forth above, the Supreme Court held in *Padilla*, that "[w]hen the law is not succinct and straightforward (as it is in many of the scenarios posited by Justice Alito), a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." *Padilla*, 559 U.S. at 369. Appellant

---

4. {¶ a} R.C. 2943.031(A) requires that a trial court give the following advisement to a noncitizen defendant prior to accepting his plea:

> {¶ b} If you are not a citizen of the United States you are hereby advised that conviction of the offense to which you are pleading guilty * * * may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States.

believes the "immigration consequences of this plea were readily ascertainable" and "mandated deportation" as he pled to an offense that can be classified as an "aggravated felony." However, contrary to appellant's arguments, we find that the immigration consequences for appellant's offenses were not succinct and straightforward.

{¶ 28} Pursuant to 8 U.S.C. 1227(a)(2)(A)(iii), "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." The term "aggravated felony" means "a crime of violence * * * for which the term of imprisonment [is] at least one year." 8 U.S.C. 1101(a)(43)(F). The term "crime of violence" means "any other offense that is a felony that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. 16(b).

{¶ 29} As Justice Alito recognized in his concurrence in *Padilla*, "determining whether a particular crime is an 'aggravated felony' * * * is not an easy task. * * * Defense counsel who consults a guidebook on whether a particular crime is an 'aggravated felony' will often find that the answer is not 'easily ascertained.'" *Padilla* at 378. The majority opinion in *Padilla* excepts from the "truly clear" category of offenses those "scenarios posited by Justice Alito." *Id.* at 369. Therefore, as the determination of whether an offense is an "aggravated felony" is not "truly clear" or easily ascertainable, defense counsel's duty was to provide advice that the "criminal charges may carry a risk of adverse immigration consequences." *Id.* This is precisely the advisement the trial court provided to appellant in complying with R.C. 2943.031.

{¶ 30} Finally, it is unclear whether appellant's conviction for failure to comply with the order or signal of a police officer mandates deportation. Although a November 20, 2015 decision by an immigration court found appellant removable under 8 U.S.C. 1227(a)(2)(A)(iii) for having committed an aggravated felony that is a "crime of violence," the Sixth Circuit Court of Appeals recently determined that the "residual definition of 'crime of violence,' 8

U.S.C. § 1101(a)(43)(F); 18 U.S.C. 16(b), [is] void for vagueness." *Shuti v. Lynch*, 828 F.3d 440, 451 (6th Cir.2016). Appellant has represented to this court that since the Sixth Circuit's decision in *Shuti*, he has been released from the immigration detainer he had been held under. Therefore, until the United States Supreme Court holds otherwise, appellant is not subject to mandatory deportation for having committed an "aggravated felony" that is a "crime of violence."

{¶ 31} Accordingly, upon consideration of the factors identified above, we find that appellant has failed to satisfy the prejudice prong of the *Strickland* test. Based on the factual scenario presented in the record before us, we conclude that the trial court did not abuse its discretion in denying appellant's motion to withdraw his guilty plea. Appellant's sole assignment of error is, therefore, overruled.

{¶ 32} Judgment affirmed.

M. POWELL, J., concurs.

PIPER, J., concurs separately.

**PIPER, J., concurring separately.**

{¶ 33} Due to the extremely unique facts of this particular case, I do not agree with the majority's analysis, but do agree with the result.

{¶ 34} Under the circumstances, as fully laid out by the majority, I cannot find that trial counsel's performance was deficient such that it violated Taveras' Sixth Amendment right to the effective assistance of counsel. Going all the way back to September 2011, Taveras knowingly, intelligently, and voluntarily entered a guilty plea after negotiations took place wherein a charge was dismissed and community control was the most likely outcome.

{¶ 35} At the plea hearing, Taveras falsely represented to both his own attorney and

directly to the trial court that he was a United States citizen. In being untruthful, Taveras forfeited any obligation his attorney or the trial court might have otherwise had in complying with *Padilla v. Kentucky*, 559 U.S. 356, 130 S.Ct. 1473 (2010). This is especially true where the facts in *Padilla* are significantly different than those sub judice. In *Padilla*, counsel was fully aware that his client was not a citizen, and despite this knowledge, not only failed to advise Padilla of deportation consequences before Padilla entered his plea, but also told Padilla not to worry about deportation because he had been in the country so long. Unlike *Padilla*, Taveras' counsel proceeded as if Taveras was a citizen because that is exactly what Taveras represented. It is therefore completely reasonable that Taveras' counsel did not advise regarding deportation consequences. Also unlike *Padilla*, Taveras' counsel never offered legally-inaccurate advice before Taveras agreed to plead guilty.

{¶ 36} The advice pursuant to *Padilla* is necessary "when negotiating a guilty plea" where the "advice is warranted," being situations where the client's citizenship or immigration status is in question. *Id.* at 370-371, 374. In the instant case, however, the advice was not warranted at the time of his plea because Taveras executed a court document and deliberately made misrepresentations to deceive his counsel and the trial court. Moreover, *Padilla* dictates that constitutional deficiency regarding ineffective assistance of counsel is necessarily linked to the "practice and expectations of the legal community: The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id.* at 366. Simply stated, it is patently reasonable under the prevailing professional norm not to advise a client of deportation consequences when that client expressly asserts American citizenship. To hold otherwise would be to place an undue burden on all attorneys to investigate the citizenship of their clients, regardless of affirmative representations. The Sixth Amendment requires no such burden on counsel.

{¶ 37} The majority analysis uniquely extends *Padilla* to a subsequent sentencing

hearing while a defense attorney's duty under *Padilla* only applies to the time-period *before the plea*. *State v. Rodriguez*, Kan.App. No. 108,505, 2014 Kan. App. Unpub. LEXIS 171 (March 14, 2014) citing *Padilla* at 364. Well after the plea, but before sentencing, the trial court discovered the fraud that Taveras had perpetrated upon the court. The majority acknowledges that at sentencing, "the trial court's statutory advisement matched the level of advisement defense counsel was obligated to provide to appellant pursuant to *Padilla*." In finding that defense counsel's performance was constitutionally deficient, the majority finds it significant that defense counsel did not request a continuance to echo the exact same words the trial court used in informing Taveras of possible deportation. The majority also finds constitutionally-deficient performance on counsel's part when he did not attempt to re-emphasize to Taveras that Taveras might want to withdraw his plea. The majority makes this finding despite the substantial plea bargain that had been negotiated on Taveras' behalf and the fact that the overwhelming evidence would have led to a more significant conviction, escalating a risk of deportation.

{¶ 38} Taveras, himself, expressly informed the court that he did not want a continuance and had no desire to withdraw his previously-entered plea *even after* being informed of potential deportation. Yet, the majority finds defense counsel should have jeopardized the plea bargain and acted contrary to his client's expressed desires so that defense counsel might inform Taveras of the *exact* same rights the trial court just gave. Requesting such a continuance was not required under *Padilla*, nor would it have done anything in furthering the demands of due process or obtaining justice on behalf of Taveras.

{¶ 39} No Ohio case holds that pursuant to *Padilla*, an attorney must ask every client about his or her immigration status or citizenship. This is particularly true of clients who affirmatively represent they are United States citizens prior to entering any plea. I can find no authority for extending *Padilla* to a sentencing hearing, and unless the interest of justice

demands such, we should decline any opportunity to do so. In the instant case, once the trial court discovered the falsehood, it appropriately and thoroughly informed Taveras that he could be deported if he continued with his sentencing. Taveras' attorney not echoing the same words as the trial court does not rise to the level of constitutionally-deficient performance of counsel so ineffective that it violates the Sixth Amendment. Taveras expressly refused a continuance, as well as an opportunity to withdraw his plea, and wanted instead to continue with his sentence that resulted in community control. Since conviction on a more serious offense was more likely to result in incarceration and inevitably increased risks of deportation, Taveras was acting smartly and in his best interests.

{¶ 40} I find no misconduct, malfeasance, or deficient performance on the part of Taveras' counsel. There simply is no "fundamental flaw in the proceedings that results in a miscarriage of justice or is inconsistent with the demands of due process." *State v. Hobbs*, 12th Dist. Warren No. CA2012-11-117, 2013-Ohio-3089, ¶ 9. Regrettably, after four years, and after three separate community control violations, Taveras has only himself to blame for his current predicament. Neither his trial counsel, nor the court system failed Taveras. Therefore, while I disagree with the majority's analysis, I concur in its judgment.