**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 19a0086n.06

No. 18-3298

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Feb 21, 2019
DEBORAH S. HUNT, Clerk

JAMES R. CHAMBERS,          )
                            )
     Petitioner-Appellant,     )
                            )
v.                         )
                            )
UNITED STATES OF AMERICA,     )
                            )
     Respondent-Appellee.     )
                            )

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE
NORTHERN DISTRICT OF
OHIO

BEFORE:  MOORE, GIBBONS, and COOK, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.**  James Chambers pled guilty to federal bank robbery in June 2001, and the district court sentenced him as a career offender under the United States Sentencing Guidelines.  Fourteen years later, the Supreme Court held in *Johnson v. United States* that the residual clause of the Armed Career Criminal Act was void for vagueness.  135 S. Ct. 2551, 2563 (2015).  In 2016, Chambers filed a motion for relief from his career-offender sentence under 28 U.S.C. § 2255, seeking relief based on *Johnson* because he was sentenced under the identically-worded Guidelines residual clause.  Chambers argued that his 2016 motion satisfied the one-year statute of limitations under § 2255(f) because his motion asserts a right that the Supreme Court recognized in 2015 in *Johnson* and made retroactively applicable to cases on collateral review in *Welch v. United States*, 136 S. Ct. 1257, 1265 (2016).  The district court denied Chambers's motion.  Chambers now appeals that denial.

When Chambers was sentenced in 2001, the Guidelines were mandatory.  The Supreme Court's decision in *United States v. Booker* rendered them advisory.  543 U.S. 220, 245 (2005).

The Supreme Court has declared that *Johnson*'s holding does not extend to those sentenced under the Guidelines residual clause in the post-*Booker* era. *Beckles v. United States*, 137 S. Ct. 886, 892 (2017). We have held that *Johnson*'s holding does not extend to those sentenced under the Guidelines residual clause in the pre-*Booker* era either. *Raybon v. United States*, 867 F.3d 625 (6th Cir. 2017). Because Chambers cannot avail himself of *Johnson*'s holding, we cannot use the date of that decision as a point from which to measure his one-year limitations period. As such, his 2016 motion is untimely § 2255(f). Therefore, we affirm.

I.

In June 2001, James Chambers pled guilty to five counts of a six-count indictment for unarmed bank robbery in violation of 18 U.S.C. § 2133(a). The government argued that Chambers should be sentenced as a career offender under the Guidelines. To qualify as a career offender, a defendant must have committed at least two prior felony convictions of either a crime of violence or a controlled substance offense. U.S.S.G. § 4B1.1(a). Whether a prior felony conviction is a "crime of violence" is governed by § 4B1.2, which, at the time of Chambers's sentencing, provided as follows:

> (a) The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
>
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2 (2004).

The government argued that three of Chambers's prior convictions should qualify as crimes of violence: burglary with firearm specifications, aggravated robbery, and escape with the use of force. At sentencing, the district court found that the escape and aggravated robbery convictions

qualified as crimes of violence under Sixth Circuit precedent, but that the burglary conviction did not. The district court designated Chambers as a career offender under § 4B1.1 and sentenced him to 151 months' imprisonment.

In June 2016, Chambers filed a motion seeking post-conviction collateral relief under 28 U.S.C. § 2255. In light of the Supreme Court's decision in *Johnson* that the residual clause in the Armed Career Criminal Act (ACCA) was unconstitutionally vague, 135 S. Ct. at 2563, Chambers sought relief based on the identical clause in the Guidelines. The district court denied his motion in March 2017, finding Chambers's argument foreclosed by Sixth Circuit precedent. *See Raybon*, 867 F.3d at 629–30 (holding that *Johnson* did not create a right applicable to petitioner sentenced under the pre-*Booker* Guidelines residual clause and did not provide a point from which to measure the one-year limitations period for his § 2255 motion).

Chambers then filed a motion for reconsideration. The district court held this motion in abeyance, pending the outcome of another Sixth Circuit case. *See Chubb v. United States*, 707 F. App'x 388 (6th Cir. 2018) (finding petitioner's § 2255 motion untimely because *Johnson* did not create a right applicable to those sentenced under the mandatory Guidelines). In March 2018, the district court denied Chambers's motion for reconsideration, concluding that his § 2255 motion was untimely. The district court granted Chambers a certificate of appealability on two questions:

> 1. Whether, under 28 U.S.C. § 2255(f)(3), defendants sentenced under the mandatory, pre-*Booker* Sentencing Guidelines were permitted to file a petition for habeas corpus within one year of the Supreme Court's decisions in *Johnson v. United States* and *Welch v. United States*.
>
> 2. Whether, under the Supreme Court's decision in *Johnson v. United States*, the residual clause of U.S.S.G. § 4B1.2 is void for vagueness as to all defendants sentenced as career offenders under that clause prior to the Supreme Court's decision in *United States v. Booker*.

DE 66, Op. & Order, Page ID 248.

II.

A.

"In reviewing a denial of a 28 U.S.C. § 2255 motion," this court "review[s] the district court's legal conclusions *de novo* and its factual findings for clear error." *Jamieson v. United States*, 692 F.3d 435, 439 (6th Cir. 2012) (citing *Hamblen v. United States*, 591 F.3d 471, 473 (6th Cir. 2009)). This court also "review[s] *de novo* a district court's conclusion that a crime qualifies as a predicate offense for the career-offender designation" under the Guidelines. *United States v. Baker*, 559 F.3d 443, 450 (6th Cir. 2009) (quoting *United States v. Skipper*, 552 F.3d 489, 491 (6th Cir. 2009)).

B.

The Anti-Terrorism and Effective Death Penalty Act (AEDPA) provides strict gate-keeping requirements for the filing of post-conviction petitions. The one-year limitations period to bring a § 2255 motion for relief commences upon the latest of the following:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

Chambers argues that his 2016 motion was timely under subsection (f)(3) because he filed it within one year of the newly established right recognized by the Supreme Court in *Johnson* in 2015 and made retroactively applicable to cases on collateral review in *Welch*. In *Johnson v.*

*United States*, the Supreme Court held that the residual clause of the ACCA's definition of a "violent felony"[1] was unconstitutionally vague and violated due process. 135 S. Ct. at 2563. The Court later held that *Johnson* has retroactive effect in cases on collateral review. *Welch*, 136 S. Ct. at 1265.

In the wake of *Johnson* and *Welch*, Chambers and numerous others serving career-offender sentences sought relief under § 2255. In his motion, Chambers argued that, because he "was sentenced as a career offender under identical language to the now invalidated ACCA residual clause," he was entitled to relief under *Johnson*. DE 51, Mot., Page ID 58. However, the Supreme Court in *Beckles* held that the advisory Guidelines were not subject to void-for-vagueness challenges and declined to extend *Johnson*'s holding to the identically-worded Guidelines residual clause.[2] 137 S. Ct. at 892. The Court made clear that the *Beckles* holding applied only to the advisory Guidelines. *Id.* at 890, 892, 895–96. The Court left open the question of whether *Johnson* extends to those sentenced under the residual clause pre-*Booker*, when the Guidelines were mandatory. *Id.* at 903 n.4 (Sotomayor, J., concurring in judgment) (noting that the Court's decision "at least leaves open the question whether defendants sentenced to terms of imprisonment before our decision in *United States v. Booker* . . . may mount vagueness attacks on their sentences").

Chambers argues that *Beckles* does not preclude him from availing himself of *Johnson*'s holding because its applicability to his pre-*Booker* career-offender designation is an open question. Our previous holdings, however, have answered that question in the negative. Chambers's argument, thus, is squarely foreclosed by precedent.

---

[1] The residual clause under the ACCA defines a "violent felony" as any felony that "otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B).

[2] Before August 1, 2016, the residual clause under the Guidelines defined a "crime of violence" as any felony that "otherwise involves conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(a)(2). The Guidelines were later amended to remove the residual clause from § 4B1.2.

In *Raybon v. United States*, the petitioner sought relief under § 2255, arguing that his career-offender sentence was predicated on a conviction for a crime that no longer constituted a crime of violence under the residual clause of the ACCA. 867 F.3d 625, 628 (6th Cir. 2017). Like Chambers, however, the petitioner in *Raybon* was sentenced as a career offender under the Guidelines. *Id.* Based on the identical wording of the residual clauses under the ACCA and § 4B1.2(a)(2) of the Guidelines, the petitioner in *Raybon* argued that he was entitled to relief under *Johnson*. Because *Johnson* was decided in 2015, he argued that his motion—filed in June 2016, ten years after his conviction became final—was timely under § 2255(f)(3). *Id.* We rejected that argument because whether *Johnson* extends to mandatory Guidelines "is an open question," rather than a new right recognized by the Supreme Court. *Id.* at 630. In other words, the Supreme Court's 2015 decision in *Johnson* did not provide a point from which to measure the one-year limitations period for the petitioner's § 2255 motion. We therefore found the petitioner's motion untimely. *Id.*

Earlier this year, in *Chubb v. United States*, we addressed a similar claim and denied relief. 707 F. App'x 388 (6th Cir. 2018). In *Chubb*, the petitioner sought relief from his career-offender sentence—imposed under the pre-*Booker*, mandatory Guidelines—based on *Johnson* and *Beckles*. *Id.* at 389. As in *Raybon*, we found that the petitioner's § 2255 motion—filed twenty years after his conviction became final—was untimely because *Johnson*'s holding did not apply to him and, thus, his motion failed to satisfy the requirements of § 2255(f)(3). *Id.* at 390.

In the instant case, *Raybon* is binding,[3] and *Chubb* is instructive. Chambers's motion fails to assert a newly-recognized right applicable to him. *See* 28 U.S.C. § 2255(f)(3). We thus cannot

---

[3] Both parties agree that *Raybon* is mandatory authority. Chambers seeks this panel's reconsideration of *Raybon*, but this panel "may not overrule the decision of another panel." *United States v. Ferguson*, 868 F.3d 514, 515 (6th Cir. 2017). *See also Sykes v. Anderson*, 625 F.3d 294, 319 (6th Cir. 2010) (noting that a panel has no authority

measure the one-year limitations period for Chambers's motion from the 2015 decision in *Johnson*. Because it was filed nearly fifteen years after his conviction became final, Chambers's motion is time-barred, and we need not address the merits of the motion.

III.

Therefore, we find Chambers's motion untimely and affirm the judgment of the district court.

---

to overrule a prior published panel decision unless a subsequent Supreme Court decision so requires); *United States v. Moody*, 206 F.3d 609, 615 (6th Cir. 2000) (same).

**KAREN NELSON MOORE, Circuit Judge, concurring.** I concur in the judgment in this case, but only because *Raybon v. United States*, 867 F.3d 625, 629–30 (6th Cir. 2017), *cert. denied*, 138 S. Ct. 2661 (2018), is binding on this panel. *See Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985); 6th Cir. R. 32.1(b). *Raybon* held that the residual clause of the mandatory Sentencing Guidelines—which is textually and functionally identical to the Armed Career Criminal Act's ("ACCA") residual clause that the Supreme Court held was unconstitutional in *Johnson*—is not subject to the prohibition against vague laws. Chambers concedes that *Raybon* decides his case, but he urges en banc review to reconsider this precedent. Appellant's Br. at 9, 12.

I write separately because *Raybon* was wrong on this issue. We should should accept the invitation to rehear this case en banc and overturn *Raybon*.

I.

A.

When the district court sentenced Chambers in 2001, the Sentencing Guidelines were mandatory. In calculating his sentence, the district court applied the career-offender enhancement pursuant to U.S.S.G. § 4B1.1. R. 70 (PSR at 10) (Page ID #269); U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 4B1.1 (U.S. Sentencing Comm'n 2000). Then in 2005, the Supreme Court held that the mandatory Guidelines were unconstitutional and remedied this constitutional defect by severing the portion of the Sentencing Reform Act of 1984 ("SRA") that made the Guidelines mandatory. *United States v. Booker*, 543 U.S. 220, 245 (2005). In so modifying the SRA, the Court made "the Guidelines effectively advisory." *Id.*

Section 4B1.1 of the mandatory Guidelines provided, in part, that "[a] defendant is a career offender if . . . the instant offense of conviction is a felony that is . . . a crime of violence . . . ."

Section 4B.1.2(a), in turn, defined "crime of violence" as "any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that . . . is burglary of a dwelling, arson, or extortion, involves the use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*." U.S.S.G. § 4B1.2(a)(2) (emphasis added). The latter portion of this provision is known as the "residual clause."

In *Johnson v. United States*, the Supreme Court held that the identically worded residual clause in the ACCA, 18 U.S.C. § 924(e)(2)(B)(ii), was unconstitutionally vague. 135 S. Ct. 2551, 2563 (2015). The following Term, the Court made *Johnson* retroactive. *Welch v. United States*, 136 S. Ct. 1257, 1265 (2016).

Chambers filed the 28 U.S.C. § 2255 motion at issue in this case on June 17, 2016, R. 51 (Second § 2255 Mot.), within one year after the decision in *Johnson*. The district court denied this motion based on the Supreme Court's decision in *Beckles v. United States*, 137 S. Ct. 886 (2017) (holding that vagueness doctrine did not apply to the advisory Guidelines). *See United States v. Chambers*, No. 1:01-cr-172, 2018 WL 1388745, at *1 (N.D. Ohio Mar. 20, 2018). Chambers moved for reconsideration. On reconsideration, the district court concluded that, "[w]hile the [district court's] initial opinion did not address whether *Beckles* applied to pre-*Booker* sentences, Chambers's motion for reconsideration must still be denied. As both parties acknowledge, Chambers's petition is untimely according to binding Sixth Circuit precedent." *Id.* Further, the district court granted a certificate of appealability and noted a current circuit split on whether *Johnson* applied to pre-*Booker* sentences. *Id.* at *2. In fact, the district court expressed significant sympathy for Chambers's position and skepticism as to *Raybon*'s correctness. *Id.* at *2.[2]

---

[2] On this point, it is worth quoting Judge Gwin's reasoning:

[T]here are significant reasons to be skeptical of the Sixth Circuit's *Raybon* decision. For one thing, it essentially shields pre-*Booker* residual clause sentences from any review under *Johnson*. Unless someone can timely raise an issue, it is impossible for the Supreme Court to resolve

Notably, *Beckles* was contrary to the Sixth Circuit's (and almost every other circuit's) expectations. *See United States v. Pawlak*, 822 F.3d 902, 911 (6th Cir. 2016) (holding that the residual clause of the *advisory* Guidelines was unconstitutionally vague because "[a]fter *Johnson*, no one disputes that the identical language of the Guidelines' residual clause implicates the same constitutional concerns as the ACCA's residual clause."); *see also Beckles*, 137 S. Ct. at 892 n.2 (collecting cases that resulted in the circuit split on the issue of *Johnson*'s applicability to the advisory Guidelines, with only the Eleventh Circuit holding that *Johnson* did not apply). But that surprise has not stopped the First and Seventh Circuits, or the D.C. District Court, from allowing habeas petitioners who were sentenced pre-*Booker* to mount *Johnson* vagueness challenges against the *mandatory* Guidelines. *Cross v. United States*, 892 F.3d 288 (7th Cir. 2018); *Moore v. United States*, 871 F.3d 72 (1st Cir. 2017); *United States v. Hammond*, --- F. Supp. 3d ---, No. 92-471, 2018 WL 6200897, at \*12–16 (D.D.C. Nov. 28, 2018); *cf. United States v. Helmy*, 951 F.2d 988, 993–94 (9th Cir. 1991) (assuming that the mandatory Guidelines were subject to the prohibition against vagueness and addressing a vagueness challenge to a Guidelines provision on the merits). But other circuits that have addressed this issue, including the Sixth, sit on the other side of the split. *See United States v. Greer*, 881 F.3d 1241, 1247 (10th Cir.) (holding that the Supreme Court

---

it and thereby trigger the application of the "newly discovered" rights exception. And the last defendant sentenced under the mandatory guidelines regime would have been sentenced around the time *Booker* was decided in 2005, so it follows that no one sentenced under that regime will fall within AEDPA's ordinary statute of limitations.

For another, it seems to the Court that the *right* vindicated in *Johnson* was the right to be free from unconstitutionally vague statutes that fail to clearly define "crime of violence" or "violent felony," not simply the right not to be sentenced under the residual clause of the ACCA. Here, Chambers similarly seeks to vindicate that right not to be sentenced under unduly vague sentencing provisions. The excessively narrow construction of § 2255(f)[] adopted in *Raybon* invites Potemkin disputes about whether the Supreme Court has explicitly applied its precedents to a specific factual circumstance rather than asking whether the *right* the Supreme Court has newly recognized applies to that circumstance.

*United States v. Chambers*, No. 1:01-cr-172, 2018 WL 1388745, at \*2 (N.D. Ohio Mar. 20, 2018).

has not recognized the right of petitioners to challenge their pre-*Booker* sentences under *Johnson* because such challenges go to the mandatory Guidelines' residual clause and not the ACCA specifically), *cert. denied*, 139 S. Ct. 374 (2018); *United States v. Brown*, 868 F.3d 297, 302–03 (4th Cir. 2017) (2-1 decision, with Gregory, C.J., dissenting), *cert. denied*, 139 S. Ct. 14 (2018); *Raybon*, 867 F.3d at 629–30 (reasoning that whether *Johnson* applies to the mandatory Guidelines is an "open question"); *In re Griffin*, 823 F.3d 1350, 1354 (11th Cir. 2016) (holding that the mandatory Guidelines cannot be challenged as unconstitutionally vague).

B.

Title 28 U.S.C. § 2255(a) provides that a federal prisoner "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." Because this § 2255 motion comes nearly fifteen years after Chambers's sentence was imposed, Chambers must satisfy the gatekeeping requirements of § 2255(f)(3). This provision requires that the motion must be filed within one year from when the Supreme Court recognizes a right and that the Court has made that right retroactive on collateral review. *Id.* As mentioned, Chambers filed the instant motion within one year after the Court decided *Johnson*, and the Court made *Johnson* retroactive in *Welch*.

The question here is purely legal: Does Chambers's § 2255 motion assert the right recognized, and made retroactive, by the Supreme Court in *Johnson*? It does. Because *Raybon* concludes otherwise, we should rehear this case en banc and take that opportunity to overturn this wrongly decided precedent.

II.

The Fifth Amendment provides that "No person shall . . . be deprived of life, liberty, or property, without due process of law." "The Constitution's prohibition of vague laws springs from this well." *Shuti v. Lynch*, 828 F.3d 440, 443 (6th Cir. 2016). The pathmarking 2015 decision of *Johnson* applied this prohibition against vagueness to sentencing laws, stating that a vague sentencing law "both denies fair notice to defendants and invites arbitrary enforcement by judges." *Johnson*, 135 S. Ct. at 2557; *see also Sessions v. Dimaya*, 138 S. Ct. 1204, 1223 (2018) (Gorsuch, J., concurring) ("Vague laws invite arbitrary power."). We have reasoned previously that *Johnson* came "with far-reaching precedential effects." *Shuti*, 828 F.3d at 444. In *Shuti*, we held that *Johnson* applied to the Immigration and Nationality Act's ("INA") residual clause. *Id.* at 446. We reasoned that "[t]he consistent comingling of residual-clause precedents interpreting the INA, ACCA, *and Guidelines* shores up our conclusion." *Id.* (emphasis added); *see also id.* at 447 ("INA cases can be applied to the ACCA, ACCA cases can be applied to the Guidelines, and Guidelines cases can be applied to the INA."). Our court in *Raybon*, however, concluded that the prohibition against vagueness does not apply to the mandatory Guidelines. *Raybon*, 867 F.3d at 629–30;[2] *see also Chubb v. United States*, 707 F. App'x 388, 390 (6th Cir. 2018).

*Johnson* and other Supreme Court precedent dictate a different result than that reached by this court in *Raybon*. Just last Term, the Supreme Court confirmed our reasoning in *Shuti* that,

---

[2] *Raybon*'s holding on this point was an alternative holding. *See* 867 F.3d at 631–32 (stating that "we can also decide this issue on the merits[,]" and "[a]ssuming the residual clause is void, . . . we conclude that Raybon's conviction still qualifies as a crime of violence under the elements clause."). I am not prepared to question the practice of alternative holdings, and an alternative holding is still a holding. *See Richmond Health Facilities–Kenwood, LP v. Nichols*, 811 F.3d 192, 201–02 (6th Cir. 2016); *Pratt v. Ventas, Inc.*, 365 F.3d 514, 521 (6th Cir. 2004); *see also Woods v. Interstate Realty Co.*, 337 U.S. 535, 537 (1949). But I note that recently the practice has come under some criticism on our court. *See United States v. Burris*, 912 F.3d 386, 410 (6th Cir. 2019) (en banc) (Kethledge, J., concurring in the judgment); *see also id.* (Rogers, J., concurring in part and in the judgment) (agreeing with Judge Kethledge). For reasons explained below, this case may have "real consequences to the part[y] before us," and therefore, perhaps our thinking will be "more careful[] [and] more focused" on this particular issue. *See id.* at 410 (Kethledge, J., concurring in the judgment).

"*Johnson* is a straightforward decision," and that decision had an "equally straightforward application" to the INA's residual clause. *Dimaya*, 138 S. Ct. at 1213; 18 U.S.C. § 16(b). If *Dimaya* was straightforward, then this case is even more so. After all, unlike the INA, the mandatory Guidelines' residual clause is *completely identical* to the ACCA's residual clause that the Court found to be unconstitutionally vague in *Johnson*. "Because the residual clause in the" mandatory Guideline provision "now before us uses [the] exact[] same language as the residual clause in *Johnson*, respect for precedent alone would seem to suggest that both clauses should suffer the same judgment." *See Dimaya*, 138 S. Ct. at 1224 (Gorsuch, J., concurring).

The Court in *Johnson* held that the prohibition of vagueness "appl[ies] not only to statutes defining elements of crimes, but also to statutes fixing sentences." 135 S. Ct. at 2557. "Two features of [the ACCA's] residual clause conspire[d] to make it unconstitutionally vague." *Id.* Those dual flaws were: (1) "ACCA's residual clause created 'grave uncertainty about how to estimate the risk posed by a crime' because it 'tie[d] the judicial assessment of risk' to a hypothesis about the crime's 'ordinary case.'"; and (2) "ACCA's residual clause left unclear what threshold level of risk made any given crime a 'violent felony.'" *Dimaya*, 138 S. Ct. at 1213–14 (quoting *Johnson*, 135 S. Ct. at 2557–58). Importantly, *Johnson* emphasized that these flaws stemmed from layering the "imprecise 'serious potential risk' standard" onto "a judge-imagined abstraction [of what an 'ordinary case' might be]," as opposed to applying that standard "to real-world facts." *Johnson*, 135 S. Ct. at 2558. The Court thus concluded that, "[b]y combining indeterminacy about how to measure the risk posed by a crime with indeterminacy about how much risk it takes for the crime to qualify as a violent felony, the residual clause produces more unpredictability and arbitrariness than the Due Process Clause tolerates." *Id.*

The Court relied on these dual flaws when it rejected the argument that its ruling would cast constitutional doubt on many other federal and state criminal laws. As the Court explained,

> Almost none of [those other laws] links a phrase such as "substantial risk" to a confusing list of examples. . . . More importantly, almost all of the cited laws require gauging the riskiness of conduct in which an individual defendant engages *on a particular occasion*. As a general matter, we do not doubt the constitutionality of laws that call for the application of a qualitative standard such as "substantial risk" to real-world conduct . . . . The residual clause, however, requires application of the "serious potential risk" standard to an idealized ordinary case of the crime. Because the elements necessary to determine the imaginary ideal are uncertain both in nature and degree of effect, this abstract inquiry offers significantly less predictability than one that deals with the actual . . . facts.

*Id.* at 2561 (internal citations and quotation marks omitted). Therefore, the Court did not cast constitutional doubt on laws that used *only* indeterminate phrases like "substantial risk" and then apply that standard to real-world conduct in which a defendant engages on a specific occasion.

Laws that fuse the two flaws fall in the heartland of *Johnson*. The Court confirmed this in *Dimaya*, 138 S. Ct. at 1214 ("The problem [with the ACCA's residual clause] came from layering such a standard on top of the requisite 'ordinary case' inquiry."). In *Dimaya*, the Court struck down the INA's residual clause because it contained these same flaws. *Id.* at 1216.

The mandatory Guidelines' residual clause also contains the dual flaws and is therefore unconstitutionally vague. First, § 4B1.2(a)(2)'s residual clause matches the ACCA's residual clause word for word. Second, the same interpretation and ordinary-case analysis applies to the ACCA as it does to the Guidelines. *United States v. Morris*, 885 F.3d 405, 412–13 (6th Cir. 2018) (citing *James v. United States*, 550 U.S. 192, 208 (2007), and noting that, although *Johnson* abrogated parts of *James*, the Supreme Court did not disturb this portion of *James* "for purposes of analyzing the residual clause of the Guidelines."); *United States v. Ford*, 560 F.3d 420, 421 (6th Cir. 2009) ("[W]e treat a 'crime of violence' under § 4B1.1(a) of the guidelines the same as a 'violent felony' under the [ACCA], 18 U.S.C. § 924(e)(1), because both laws share essentially the

same definitions (if not the same titles).") (internal citations omitted); *United States v. Houston*, 187 F.3d 593, 594–95 (6th Cir. 1999) (same, under the mandatory Guidelines). Although *Johnson* rejected the "sentiment" that "it was placing textually similar laws into 'constitutional doubt,'" *Raybon*, 867 F.3d at 630 (explaining *Johnson*), § 4B1.2(a)(2) contains the *exact same* language and requires the *exact same* inquiry that, when combined, *Johnson* found constitutionally fatal.

The Guidelines' history confirms the identical nature of the residual clauses of § 4B1.2(a)(2) and the ACCA. When § 4B1.2 was first amended to include the wording at issue here, the Sentencing Commission stated that, "[t]he purpose of this amendment is to clarify the definition[] of crime of violence . . . . The definition of crime of violence used in this amendment is derived from 18 U.S.C. § 924(e) [i.e., the ACCA]." U.S.S.G., *Amendments to the Sentencing Guidelines Manual of October 1987*, at App. C.139 (U.S. SENTENCING COMM'N 1989). The upshot: these two laws are and were always meant to be the same. Logic dictates that both should suffer the same judgment.

*Johnson* and *Booker* further provide support for the conclusion that these two residual clauses are functionally identical, not just textually identical. Notably, the Supreme Court has cited to *Guidelines cases* to demonstrate that *the ACCA's* residual clause "has proved nearly impossible to apply consistently." *See Johnson*, 135 S. Ct. at 2560; *United States v. Carthorne*, 726 F.3d 503, 510–15 (4th Cir. 2013) (addressing § 4B1.2); *United States v. McDonald*, 592 F.3d 808, 810–16 (7th Cir. 2010) (same); *United States v. Whitson*, 597 F.3d 1218, 1220–22 (11th Cir. 2010) (same); *United States v. Williams*, 559 F.3d 1143, 1146–49 (10th Cir. 2009) (same). Again, the two residual clauses share the same constitutional defect and should share the same fate.

Moreover, the Supreme Court has repeatedly recognized that, "[a]s enacted, the SRA made the Sentencing Guidelines binding." *Dillon v. United States*, 560 U.S. 817, 820 (2010) (citing

*Booker*, 543 U.S. at 233–34); *Booker*, 543 U.S. at 234 ("[Section 3553(b)] directs that the court '*shall* impose a sentence of the kind, and within the range' established by the Guidelines"). As such, the mandatory Guidelines had "the force and effect of laws." *Booker*, 543 U.S. at 233–34 (citing *Mistretta v. United States*, 488 U.S. 361, 391 (1989); *Stinson v. United States*, 508 U.S. 36, 42 (1993)); *see also Hill v. Masters*, 836 F.3d 591, 599 (6th Cir. 2016). Accordingly, the mandatory Guidelines, because they were binding via the SRA, were laws that "fix[ed] sentences." *Johnson*, 135 S. Ct. at 2557. Notably, the possibility of a departure did not cure the constitutional flaw in the mandatory sentencing scheme in *Booker*. 543 U.S. at 234–35. It is hard to fathom why this case is any different.

The Court in *Johnson*, therefore, newly recognized a defendant's right to be sentenced pursuant to a law that is not unconstitutionally vague. The *Johnson* vagueness inquiry specifically turns on whether a law that fixes sentences contains the same dual flaws that the ACCA contained. One year later, the Court held that the right recognized in *Johnson* applied retroactively on collateral review. *Welch*, 136 S. Ct. at 1265. Chambers asserts that right, applied to an identical law that fixes sentences, in this collateral proceeding.

Our court would not be creating a "new rule" by applying *Johnson* to the mandatory Guidelines at issue here. "[A] case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." *Teague v. Lane*, 489 U.S. 288, 301 (1989). On the other hand, "a case does *not* announce a new rule" if it is "merely an application of the principle that governed a prior decision to a different set of facts." *Chaidez v. United States*, 586 U.S. 342, 347–48 (2013) (internal quotations omitted). As the foregoing analysis of Supreme Court precedent shows, applying *Johnson*'s rule to the identical residual clause in the mandatory Guidelines *is dictated* by precedent. Specifically, *Johnson* itself and the Supreme Court's repeated

recognition that the mandatory Guidelines had the force and effect of law dictate the result here. *Cf. In re Watkins*, 810 F.3d 375, 381 (6th Cir. 2015) (explaining that, "even where the Supreme Court does not expressly hold that a new rule applies retroactively, the Court may 'ma[k]e' a new rule retroactive through multiple holdings that logically dictate the retroactivity of the new rule.") (internal quotation marks omitted). And *Johnson* is retroactive. This case, as in *Dimaya*, is merely a straightforward application of the principle that governed *Johnson*. Like the INA's residual clause, the mandatory Guidelines' residual clause "falls squarely within *Johnson*'s core holding." *See Shuti*, 828 F.3d at 447.

That should end this case and that is how *Raybon* should have ended. But then *Raybon*, like other circuits, misread and misunderstood the consequences of the Supreme Court's recent decision in *Beckles*. The other side of the circuit split, and in particular the Seventh Circuit's decision in *Cross*, 892 F.3d 288, puts forth a more persuasive case for how to read *Beckles* alongside *Johnson*. *See also United States v. Brown*, 868 F.3d 297, 304–11 (4th Cir. 2017) (Gregory, C.J., dissenting). *Beckles* limited vagueness challenges to "laws that fix the permissible sentences for criminal offenses," *Beckles*, 137 S. Ct. at 892, and the *mandatory* Guidelines did just that (whereas the advisory Guidelines do not).

*Raybon* misread *Beckles*. The court thought that "whether [*Johnson*] applies to the mandatory guidelines . . . is an open question." *Raybon*, 867 F.3d at 629. To support this belief, the court relied on *Beckles*'s repeated reference that its holding applied to only the advisory Guidelines. *Id.* That's true. But the "open question" line comes not from the Supreme Court's majority in *Beckles*, but rather, from Justice Sotomayor's concurrence in the judgment. *Beckles*, 137 S. Ct. at 903 n.4 (Sotomayor, J., concurring in the judgment), *cited in Raybon*, 867 F.3d at 629–30. The *Beckles* majority, however, simply repeated, over and over, its reliance on the

distinction that, "[u]nlike the ACCA, . . . the advisory Guidelines do not fix the permissible range of sentences." *Beckles*, 137 S. Ct. at 892; *see also id.* at 894 ("Because they merely guide the district courts' discretion, the Guidelines are not amenable to a vagueness challenge.").

Not so for the mandatory Guidelines. The mandatory Guidelines did indeed fix a particular sentence and denied the district court's discretion. *See Booker*, 543 U.S. at 233–35; *id.* at 233 (noting that the mandatory Guidelines could not "be read as merely advisory provisions that recommended, rather than required, the selection of particular sentences," because, if they did, "their use would not implicate" constitutional concerns). In this way, *Beckles* is consistent with *Booker*'s distinction between advisory Guidelines that guide district courts' discretion and mandatory Guidelines that bind district courts. Hence, the advisory Guidelines do not pose a Fifth Amendment vagueness problem, just as the advisory Guidelines did not pose the Sixth Amendment problem at issue in *Booker*. But then the flip side of the coin must also be true: mandatory Guidelines that "require[] the selection of particular sentences" and that "have the force and effect of laws," *id.* at 233, 234, fall squarely within the heartland of *Johnson*. Simply put, *Johnson* applies to "laws that *fix the permissible sentences* for criminal offenses." *Beckles*, 137 S. Ct. at 892.

Therefore, *Booker* and *Johnson*, together, dictate the answer to *Raybon*'s supposed "open question" when mandatory Guidelines are at issue. *Beckles*, rather than leave a question open, merely declined to extend *Johnson*'s rule to laws that do not entirely "fix sentences"—i.e., the advisory Guidelines. *Dimaya* further supports overturning *Raybon*. *Dimaya* was not an "extension," per se, of *Johnson*; instead, *Dimaya* was simply a "straightforward application" of *Johnson*'s vagueness rule, and the Court gave no indication that it was announcing a novel rule. 138 S. Ct. at 1213. That is, of course, because *Johnson* was the case that already broke new ground.

Both the ACCA and the INA contained the dual vagueness flaws—so too for § 4B1.2(a)(2). The ACCA fixes sentences—so too for the mandatory Guidelines. And again, the ACCA's residual clause and § 4B1.2(a)(2)'s residual clause are identical. The "open question" thus seems quite closed and straightforward.

But the *Raybon* panel attempted to bolster its reasoning by citing an out-of-circuit district court's reading of portions of *Johnson* and *Welch*, which noted that the rule announced in *Johnson* "'cast[s] no doubt' on laws using similar language." *Raybon*, 867 F.3d at 630 (quoting *Mitchell v. United States*, No. 3:00-CR-00014, 2017 WL 2275092, at *4 (W.D. Va. May 24, 2017)). That language has absolutely nothing to do with the distinction between advisory and mandatory Guidelines, upon which *Beckles* relied. Instead, as shown above, the Supreme Court was merely clarifying the contours of the rule it announced in *Johnson*: for a law to be placed in "constitutional doubt," it must combine indeterminate language (e.g., "substantial risk") with the ambiguous ordinary-case standard. But then *Beckles* further clarified that *Johnson* applied only to laws that fix sentences. *Beckles* concluded that the advisory Guidelines do not fit that bill. The mandatory Guidelines do. In short, *Raybon*'s analysis of these cases completely missed the mark.

At any rate, no reason exists to believe that other provisions of the Guidelines—or, for example, sentencing provisions like 18 U.S.C. § 3553—raise comparable vagueness concerns. Since 1991, the Ninth Circuit has held that the (mandatory) Guidelines are subject to vagueness challenges, *see Helmy*, 951 F.2d at 993, and yet that circuit has never found a Guideline unconstitutionally vague, *Beckles*, 137 S. Ct. at 905 n.5 (Sotomayor, J., concurring in the judgment). As to § 3553, the Court already considered and dismissed the arguments against its validity in *Johnson*. *See* 135 S. Ct. at 2561. That statute and other provisions like it, which require the application of a general standard to *particular conduct* rather than to the ambiguous "ordinary

case," do not present vagueness problems. In other words, precedent and experience show that *Raybon*'s concern about other laws is inapposite.

Finally, the fact that the Sentencing Commission has erased § 4B1.2(a)(2)'s residual clause from the Guidelines provides additional support for reconsidering *Raybon*. *See generally* U.S.S.G., *Supplement to Appendix C*, *Amend. 798*, at 118–21 (2018). In amending the Guidelines, the Commission was "informed by . . . the Supreme Court's recent decision in Johnson," as well as public comments and court opinions "expressing [the] view that the definition of 'crime of violence' is complex and unclear." *Id.* at 119. Ultimately, "[t]he Commission determined that the residual clause at § 4B1.2 implicates many of the same concerns cited by the Supreme Court in Johnson." *Id.* at 121. The Commission deleted the residual clause and thereby "alleviat[ed] the considerable application difficulties associated with that clause, as expressed by judges, probation officers, and litigants." *Id.* The Commission was thus animated by constitutional and policy concerns when it struck the advisory Guidelines' residual clause. Those same concerns should animate our reconsideration of *Raybon* and its immunization of the mandatory Guidelines from the prohibition against vagueness.

\*\*\*

Notably, the Supreme Court has declined to intervene and resolve the current split among the circuits. *See Brown v. United States*, 139 S. Ct. 14 n.1 (2018) (Sotomayor, J., dissenting from denial of certiorari) (collecting denied petitions for certiorari that present this issue). As Justice Sotomayor, joined by Justice Ginsburg, stated in a recent dissent from the denial of certiorari, wherever one stands on the merits of this issue, cases like this one "present[] an important question of federal law that has divided the courts of appeals and in theory could determine the liberty of over 1,000 people." *Id.* at 16. Whether or not our court will hear this case en banc to reconsider

*Raybon*, the Supreme Court should resolve this split. It is problematic that these individuals are potentially "sentence[d] . . . in violation of the Constitution or laws of the United States," 28 U.S.C. § 2255, without clarification as to whether *Johnson* applies to a sentencing provision that is worded identically to, and is equally binding as, the ACCA's unconstitutionally vague residual clause.

III.

This case potentially presents a particularly compelling vehicle for overturning *Raybon* because Chambers, unlike Mr. Raybon, could win on the merits. *See Raybon*, 867 F.3d at 631–32 (secondarily ruling against Raybon on the merits).

We have held that California escape qualifies as a crime of violence under U.S.S.G. §§ 4B1.1, 4B1.2(a)(2). *United States v. Jackson*, 4 F. App'x 287, 290 (6th Cir. 2001) (stating that the decision was dictated by *United States v. Harris*, 165 F.3d 1062, 1068 (6th Cir. 1999)). These cases turned on whether escape should be considered a crime of violence under the Guidelines' residual clause in § 4B1.2(a)(2), *see United States v. Watts*, 7 F. App'x 526, 528 (6th Cir. 2001), i.e., whether escape is a crime that "otherwise involves conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(a)(2).

But if the residual clause under which the escape conviction potentially falls is void for vagueness, then the conviction can no longer be used as a basis for his career-offender status. At sentencing, the district court stated that Chambers's career-offender status was based on his aggravated robbery and escape convictions. R. 33 (Sentencing Tr. at 40–41) (Page ID #236–37). Accordingly, Chambers may not be a career offender if the escape conviction cannot be used.

On appeal, Chambers states that he preserves the right to amend his § 2255 motion to include a challenge to his escape conviction (if he succeeds here). Appellant's Br. at 3 n.2, 13.

But neither party extensively briefs this issue on this appeal. For now, I briefly note that this claim has some merit.

At Chambers's sentencing, the district court stated that, "the Court finds no evidence in your particular circumstances that you threatened any violence or that violence itself was reasonably to be anticipated from the circumstances associated with *your walking away* from this camp." R. 33 (Sentencing Tr. at 41) (Page ID #237) (emphasis added). Chambers's escape, therefore, appears to be just the sort of "walkaway" escape that we have already determined not to be a crime of violence.

In *Ford*, we recognized that the Supreme Court's decision in *Chambers v. United States*, 555 U.S. 122 (2009),

> establishes that at least one type of escape offense—a failure to report—is not a crime of violence. And that conclusion requires us to modify our prior decisions suggesting that all manner of escape convictions under Kentucky law (or for that matter other States' laws), including failures to report, constitute crimes of violence.

*Ford*, 560 F.3d at 423. Second, the court continued, "*Chambers*, it seems to us, also undermines the notion that a 'walkaway' conviction is a crime of violence." *Id.* And again, *Ford* was a Guidelines case that addressed whether escape was a crime of violence under §§ 4B1.1, 4B1.2. In short, as Chambers argues in his brief, he has a better case on the merits than the appellant in *Raybon*.

Indeed, a favorable ruling could have a significant effect on Chambers's sentence. Without the career-offender enhancement, Chambers's offense level would have been set at 26. R. 33 (Sentencing Tr. at 40) (Page ID #236). Instead, with the enhancement, the district court set the offense level at 32, which it adjusted to 29 for Chambers's accepting responsibility. *Id.* at 41 (Page ID #237). This is the difference between a 151-month to 188-month sentence range (Chambers received 151 months), and a 120-month to 150-month range without the enhancement—potentially

over two-and-a-half years. Or, if Chambers were given the additional reduction for acceptance of responsibility (which he almost certainly would), his sentence range would have been set at 92 to 115 months—potentially a nearly five-year difference. In other words, the "problematic part" of *Raybon* may pose a "problem for the defendant before the court." *United States v. Burris*, 912 F.3d 386, 410 (6th Cir. 2019) (en banc) (Rogers, J., concurring in part and in the judgment).

For Chambers, then, *Raybon*'s mistakes may make a difference. "With those mistakes now obvious, it is untenable to allow" *Raybon* "to continue to both require the district courts in this circuit to enhance defendants' prison sentences based on" an unconstitutionally vague residual clause, "and to require panels of this court to affirm those incorrectly enhanced sentences." *Burris*, 912 F.3d at 406–07 (Lead Op.); *see also id.* at 407 ("For who wouldn't hold a rightly diminished view of our courts if we allowed individuals to linger longer in prison than the law requires only because we were unwilling to correct our own obvious mistakes." (quoting *Hicks v. United States*, 137 S. Ct. 2000, 2001 (2017) (Gorsuch, J., concurring))).

## IV.

For these reasons, this case presents a compelling vehicle to correct wrongly decided and now-undermined Sixth Circuit law. I urge our court to rehear this case en banc.